(No. 5321.   April 10, 1930.)

VIVIAN F. BALDWIN, Respondent, v. SINGER SEWING
   MACHINE   COMPANY,   a   Corporation,   and   ED
   ANDERSON, Appellants.

[287  Pac.  944.]

Martin & Martin and H. B. Walker for Appellants.

James F. Ailshie, Jr., and J. R. Smead, for Respondent.

LEE, J.—Defendant and appellant, Ed Anderson, resided at 1205 N. 11th Street in Boise. He owned a Ford automobile. Pursuant to a written contract with defendant and appellant, Singer Sewing Machine Company, the terms of which were not disclosed, he was engaged in selling sewing-machines for said company on a commission basis. He was required to make the collections on the machines he sold, for which service he received a further commission. The machines were charged to him, and sold by him in a territory specified by the company, on terms fixed by the company, under contract, the form blanks for which were furnished him by the company. He carried the company's rule book for his instructions: the contracts retained title in the company. In making collections, he sometimes repossessed a machine, the contract, in the matter of such repossession, expressly referring to him as "agent."

On January 10, 1928, he had gone to Nampa on business, as he testified, for the company and himself. On the evening of the 12th, he returned to Boise, some time before 7 o'clock, and parked his car between the Sonna and Noble

buildings, as near to defendant company's office as he "could get." He then went to the office and spent "a little time there," his reason being that he "simply stopped" because he "saw there was a light in there," and "supposed there was somebody in there," and he "would call in." There, he saw a Mr. Knowlton, the reputed "main man at Denver," and after spending a few minutes with him, he went to Geb's Cafe and had his supper, reading while there the evening paper "thoroughly." He next proceeded to the postoffice. With regard to his next movement, he testified: " . . . . and I expect I turned off and went to the 'Capital News' office." Returning to his parked car, he "hunted up a dry rag to wipe" the windshield, got into the car and started to his residence. While so proceeding, the collision complained of occurred.

Plaintiffs and respondents, Vivian F. Baldwin and E. R. Baldwin, her husband, plead that while walking west on the sidewalk situate on the north side of Main Street and across Tenth Street, she was struck by a Ford automobile driven by appellant Anderson, and severely injured; that the injuries were the result of certain specified, negligent and unlawful acts of said appellant while he was functioning within the line and scope of his employment with defendant company, and driving such automobile upon the company's business.

Defendants and appellants answered separately, admitting the alleged residence of defendant Anderson, the corporate existence of defendant Singer Sewing Machine Company, and that plaintiffs were husband and wife; all other allegations, they denied. Motions for nonsuit interposed when plaintiff rested and renewed at the close of the evience having been denied, a verdict was rendered in favor of plaintiffs and against defendants for $19,500. Judgment was entered, motions for new trial denied; and both defendants appealed, assigning error and insufficiency of the evidence.

■ Over appellants' objection, there was admitted a certain traffic ordinance of the city of Boise, prohibiting turns to the left; and, in Instruction No. 1, the court in enumerating the issues formed by the pleadings recited one charging that defendant Anderson "carelessly, recklessly, negligently and unlawfully turned said Ford car to the left." Appellants charge error. The ordinance in question was never read nor shown to the jury. Plaintiffs' counsel made no statement indicating its purport; and it was thereafter by permission of the court withdrawn. Whatever comment was made, regarding its significance, was volunteered by appellants' counsel. At the time of withdrawing the admitted exhibit, plaintiffs' counsel expressly abandoned that part of the complaint relying upon an alleged left turn as one of the acts of negligence; and the court in the presence of the jury inquired of counsel: " .... in that connection you abandoned that part of your complaint wherein you predicate negligence by failure to obey a certain ordinance, particularly that allegation of the existence of the ordinance, and the observance of its contents, as I understand it, it will be an allegation not now supported by proof." To this question or observation, plaintiffs' counsel answered: "Yes." The instruction merely set out the acts complained of in the pleadings, without any suggestion that there was proof to sustain any one of them. We see no error. Instructions, Nos. 5 and 11, may be disposed of similarly.

■ Instructions Nos. 15 and 18, outlining the principal's responsibility for his agent's acts correctly state the law. Complaint is made of counsel's misconduct in his opening statement, as follows:

"We will show that Mrs. Baldwin has not been advised of the nature of her injuries, and, unless we are required, it is not our intention to have her hear more of this evidence than is necessary."

This statement was immaterial, and the court announced that the jury should disregard it. However, Mrs. Bald-

win was present and testified; and the nature and extent of her injuries were fully described to the jury. We are unable to see how defendants could have been prejudiced.

There was no impropriety in counsel's commenting upon the failure of defendant Singer Sewing Machine Company to produce the written contract. While he had not demanded its production, the defense of the company rested primarily upon its contention that Anderson was an independent contractor and not its agent. Surely, it was not improper to assume that the contract might have been decisive upon this point, and willingly produced by defendant in support of its declared defense.

In view of the evidence adduced, we are not prepared to say that the jury's verdict was returned under the influence of passion or prejudice. Now, as to the alleged insufficiencies of the evidence: It is insisted that the evidence shows that defendant Anderson, at the time of the injury, was not "an employee of the Singer Sewing Machine Company, but was engaged as an independent contractor, in performing work for the Singer Sewing Machine Company." From the undisputed facts, it must be held that Anderson was an employee of defendant company. (*United States Fidelity & G. Co. v. Lowry*, (Tex. Civ. App.) 231 S. W. 818.) In *Moreland v. Mason*, 45 Ida. 143, 260 Pac. 1035, 1037, this court said:

"But it would seem that where the agent's functions are concerned, either entirely or mainly with the execution of contracts on behalf of the principal, although not subject to the control of the principal with respect to the details of the work, he is an agent, and not an independent contractor."

As far as the liability of defendant Singer Sewing Machine Company is concerned, the case turns upon the question of whether or not, at the time of the collision, Anderson was engaged in his master's business. A servant may undoubtedly step aside from his employment and thereafter by returning to it subject his master to liability for

ensuing negligence. But there must be some time when the servant's active employment ceases. In this instance, Anderson had returned in the evening to Boise. He parked his car and went to the company's office because, as he said, he supposed there was somebody there and he would "call in." Finding none of the office force there, he evidently considered the day's work done and busied himself no further about the company's business whatever. Supper at the cafe, reading the evening paper "thoroughly," going several blocks to the postoffice and the plant of the "Capital News" did not consume any time or postpone any duty reserved or due the company. The mere betaking of himself and his own property home could not have served to restore him to the company's employment. After reaching Boise, had he continued homeward, it might be said that he was concluding a trip made in his employer's business, but he terminated his trip at his own option when he went to the company's office, choosing to go home when in the fullness of time it pleased him. It was none of the company's business whether he went home or stayed downtown, negotiating the talkies and noodle joints until the wee sma' hours. Had he done so, no such belated return to an awaiting mattress could be said to have been undertaken in his employer's business. Under the admitted facts, it must be held as a matter of law that defendant Anderson at the time of the collision was acting in behalf of himself and none other. Defendant company's motion for nonsuit should have been sustained.

Finally, it is contended by defendant Anderson that there is no evidence establishing his negligence. Several such acts were charged as the proximate cause of plaintiff's injury. On this feature of the case, there was a mass of substantial evidence *pro* and *con*, compelling the application of the rule so often announced by this court that in the presence of such condition the verdict will not be disturbed.

From what has been said, it becomes unnecessary to discuss appellants' motions for new trial. Judgment reversed as to appellant Singer Sewing Machine Company, and

affirmed as to appellant Anderson. Costs awarded to appellant Singer Sewing Machine Company. Costs as against appellant Anderson to respondents.

Givens, C. J., and Varian and McNaughton, JJ., concur.

Sutton, D. J., dissents.

Petition for rehearing denied.

SUTTON, D. J., Dissenting.—If I correctly understand the majority opinion it is there held that the accident in question resulted from the negligence of the defendant Anderson, and that the defendant Anderson was an employee of the defendant Singer Sewing Machine Company and not an independent contractor. And, if I am not completely in error, "The master's liability is an issue to be decided by the jury or other trier of facts whenever there is a conflict of testimony regarding those facts or more than one inference may reasonably be drawn from them." (6 Labatt on Master & Servant, 2d ed., sec. 2275; *Scrivner v. Boise Payette Lumber Co.*, 46 Ida. 334, 268 Pac. 19; 39 C. J. 1362, sec. 1593; 2 Blashfield Cyc. of Automobile Law, 1792.)

An examination of the record will disclose that Anderson left his home on the tenth day of January for the purpose of soliciting sales of sewing-machines and the making of collections on behalf of the defendant company; that he went first to Eagle pursuant to that purpose and there formed the intention of going to Nampa to make a particular collection for the company; that while in Nampa he did make the particular collection and did solicit a number of prospective purchasers of sewing-machines and did transact some private business; that he returned to Boise at some time between 6 and 7 o'clock of the evening of January 12th; that he parked his car near the office of the company where he went as a matter of curiosity and not for the purpose of transacting any business or making any settle-

ment whatever; that he went from the office of the company to an eating-house for his evening meal; that from the eating-house he went on foot to the postoffice and perhaps to the "Capital News" building, from whence he returned to and entered his car and then proceeded to drive his car by the most direct route to his residence at which place he kept said car and from whence he had begun his trip on behalf of the company and for the sole purpose of completing said trip.

The reaction of the majority to these facts seems to be stated in the following sentence: "Finding none of the office force there, he evidently considered the day's work done and busied himself no further about the company's business whatever." I have searched in vain in the record for anything upon which the statement "he evidently considered the day's work done," is based, and, in my opinion, no such basis for it can be found. The majority further say: "After reaching Boise, had he continued homeward, it might be said that he was concluding a trip made in his employer's business, but he terminated his trip at his own option when "he went to the company's office, choosing to go home when in the fullness of time it pleased him." By what authority can it be said "he terminated his trip?" Of course, if that be true, the majority opinion is correct; but that, in my judgment, was a question for the jury to determine from the evidence and that evidence was such that different conclusions might reasonably be drawn therefrom. And the jury having evidently determined, under proper instructions, that the defendant Anderson had not terminated his trip but was still engaged in his master's business, it is not for this court to say the jury drew an incorrect inference. That is not the question. The question is, Could the jury reasonably draw the inference which it did draw?

It is suggested by the majority that it was none of the company's business whether defendant Anderson made a night of it at the talkies and in the noodle joints. The re-

ply to that is legion, but for the purposes of this dissent it is only necessary to observe that the defendant Anderson did not so conduct himself and had he done so the accident would not have occurred.

I believe the true rule and guide for the solution of the question is found in the language of the court in the case of *Sharp v. Erie R. R. Co.*, 184 N. Y. 100, 6 Ann. Cas. 250, 76 N. E. 923, 924, wherein it is said:

"Whether the person whose immediate negligence or misconduct caused the particular injury, was acting at the time as the servant of the person sought to be charged frequently depends on such a variety of facts that it falls outside of any definite rule, and for that reason becomes, under proper instructions, a question of fact for the jury.

"It is obvious that there is no rule or principle of law to determine such a question, and hence it belonged to the jury."

The jury having decided the questions of fact in this case under proper instructions, the findings of the jury should not be disturbed on appeal and the judgment appealed from should be affirmed.