AMERICAN SURETY CO. OF NEW YORK
v. SINGER SEWING MACH. CO.

District Court, S. D. New York.
Feb. 5, 1937.

George L. Naught, of New York City (Allan C. Rowe, of New York City, of counsel), for plaintiff.

Burlingame, Nourse & Pettit, of New York City (Arthur E. Pettit, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The action is one at law on an indemnity agreement. It was commenced in the state court and removed here for diversity of

citizenship. At the trial the parties stipulated for trial by a jury of one.

Vivian F. Baldwin and E. R. Baldwin brought suit in the District Court of the state of Idaho against Singer Sewing Machine Company and one Anderson. The suit was for personal injuries arising out of the alleged negligent operation of an automobile by Anderson, an employee of the Singer Company. The Singer Company was insured against loss on liabilities of this character, up to a limit of $10,000, and the defense of the suit was turned over to the insurance company pursuant to the provisions of the policy. A firm of attorneys retained and paid by the insurance company, Martin & Martin, appeared for the Singer Company in the suit. Anderson defended by an attorney of his own. The trial resulted in a judgment of $19,500 against the Singer Company and Anderson, and from this judgment both defendants appealed to the Idaho Supreme Court.

In connection with the appeal, the insurance company and the Singer Company made separate applications to American Surety Company for a supersedeas bond to stay execution on the judgment, the insurance company to indemnify to the extent of its policy limit, $10,000, the Singer Company to the extent of $9,500. The application of the Singer Company was for an "appeal bond to be executed on behalf of the Singer Sewing Machine Co. ads. Vivian F. Baldwin and E. R. Baldwin, covering judgment of $19,500, the Singer Sewing Machine Co. to be responsible to the extent of $9,500 and interest on that amount." In the indemnity agreement which was part of its application and on which the present action is based, the Singer Company agreed to indemnify and save harmless the Surety Company from all claims, demands, liabilities, expenses, etc. The pertinent portions of the indemnity agreement are these:

"Should the American Surety Company of New York, hereinafter called the Surety, execute or procure the execution of the suretyship hereinbefore applied for, or other suretyship in lieu thereof, the undersigned, hereinafter called the Indemnitor, do in consideration thereof, jointly and severally undertake and agree: * * *

"III. That the Indemnitor will perform all the conditions of said bond, and any and all modifications, renewals and extensions thereof, and will at all times indemnify and save the Surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees of special counsel whenever by the surety deemed necessary), expense, suit, order, judgment and adjudication whatsoever, and will place the Surety in funds to meet the same before it shall be required to make payment. * * *"

The Surety Company accordingly made a bond for costs in the sum of $300, as to which no rights are now asserted, and a supersedeas bond to stay execution in the sum of $25,000. The supersedeas bond was signed by the Surety Company alone, was delivered to the attorneys of record for the Singer Company, and was by them duly filed in the proper court. The bond, after a recital that the Singer Company had appealed from the judgment against it in favor of the Baldwins and desired to stay execution of the judgment, contained an undertaking of the Surety Company that "if the said judgment appealed from, or any part thereof, be affirmed, or the appeal dismissed, the appellant will pay * * * the amount directed to be paid as to which said judgment shall be affirmed, if affirmed only in part, and all damages and costs which may be awarded against the appellant upon the appeal, and that if the said appellant does not make payment within thirty days from the filing of the remittitur from the Supreme Court in the court from which the appeal is taken, judgment may be entered on motion of the respondents in their favor and against the undersigned surety for the said sum of $19,573.70, together with the interest that may be due thereon and the damages and costs which may be awarded against the said appellant, Singer Sewing Machine Company, upon the appeal."

As the result of the appeal the judgment was affirmed as to Anderson and reversed as to the Singer Company, and a dismissal of the action was directed as to the Singer Company. Baldwin v. Singer Sewing Machine Co. and Anderson, 49 Idaho, 231, 287 P. 944. The remittitur from the Idaho Supreme Court was duly filed in the District Court, and on May 24, 1930, final judgment dismissing the action as against the Singer Company was entered in the District Court.

On June 23, 1930, thirty days after filing of the remittitur, the Baldwins made application to the Idaho District Court for judgment against the Surety Company on the bond, without notice to any one, and judgment against the Surety Company for $22,357.21 was entered on the same day.

The basis of the judgment, as shown by its recitals, was a finding that the bond covered Anderson as well as the Singer Company and that the bond was in effect a consent by the Surety Company to entry of judgment against it in case there should be an affirmance as to Anderson. Execution was issued and levy made on property of the Surety Company.

Then began a series of strenuous but unsuccessful efforts by the Surety Company to get rid of the judgment of June 23, 1930. First, it made a motion to vacate the judgment. The District Court granted the motion, taking the view this time that the bond was merely one in behalf of the Singer Company. But the Baldwins appealed from the order vacating the judgment and won a reversal in the Idaho Supreme Court. The Idaho Supreme Court held that the District Court had jurisdiction to enter the judgment of June 23, 1930, that the only question was whether that judgment was erroneous, and that the only method of testing whether the judgment was erroneous was by appeal. It accordingly held that the lower court had no power to vacate the judgment. Baldwin v. Anderson (American Surety Co.), 50 Idaho, 606, 609, 299 P. 341. The Surety Company then took other measures—certiorari to the United States Supreme Court, an appeal to the Idaho Supreme Court from the judgment of June 23, 1930, which appeal was dismissed as taken too late, a motion to amend the judgment which was denied, and a suit in the United States courts to enjoin enforcement of the judgment. It was held by the United States Supreme Court, American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298, that the writ of certiorari to the Idaho Supreme Court should be dismissed because the Surety Company had not made any federal claims seasonably, and that the suit in the United States courts to enjoin enforcement of the judgment had been properly dismissed because the Surety Company prior to seeking relief in the United States courts had pursued its remedy in the state courts and was bound by the resulting adjudication against it there. The argument was made by the Surety Company that even if the Idaho trial court had jurisdiction to enter the judgment of June 23, 1930, that judgment was void for lack of due process because entered without opportunity to be heard on the merits. The Supreme Court took the view, however, that the Idaho practice gave the Surety Company adequate opportunity to be heard on the merits by way of appeal after entry of judgment, an opportunity lost because the Surety Company took the wrong procedure until too late to appeal effectively. After this double defeat the Surety Company brought suit in the Idaho courts to stay execution of the judgment on equitable grounds, but the Baldwins obtained an injunction against maintenance of the suit. All measures failing, the Surety Company on March 14, 1933, paid the Baldwins the sum of $26,894.-81, in satisfaction of the judgment of June 23, 1930, interest and costs.

The Surety Company had advised the Singer Company promptly of the judgment entered against it on June 23, 1930, and of the proceedings being taken to get rid of the judgment. It invited the co-operation of the Singer Company and made clear its intention of holding the Singer Company responsible for loss and expenses. The Singer Company's response was a disclaimer of responsibility. The Surety Company had given like notice to the insurance company, with the result that the insurance company sent word to Martin & Martin, the firm of attorneys whom it had retained to defend the original suit against the Singer Company, to co-operate with the attorneys for the Surety Company in steps to get rid of the judgment. The steps thereafter taken to defeat the judgment were the joint effort of both firms. It appears that the attorneys instructed by the insurance company subscribed their names to certain papers as attorneys for the Singer Company; but the fact is that the Singer Company never authorized them to act for it in any proceedings after the dismissal of the action by the Baldwins against the Singer Company.

After paying the judgment the Surety Company demanded reimbursement from the Singer Company to the extent of $95/195$ of the payment and legal expenses incurred. This portion of the Surety Company's loss came to $18,469.43. The Singer Company took the position that the loss suffered by the Surety Company was not within its indemnity agreement and refused to pay. Claim for indemnity against the insurance company to the extent of $100/195$ of the outlay was also made; the insurance company made a payment in settlement of the claim.

The facts mentioned above were stipulated as true in the present case. The manner in which the supersedeas bond was pre-

pared, however, was a disputed issue. From the depositions taken in Idaho and from the conceded fact that the bond was type-written in the office of Martin & Martin, it may be taken as proved that the bond in the form in which it was executed was drafted by someone associated with Martin & Martin, the attorneys who then represented the Singer Company in the Baldwin suit. The bond was then tendered to the Surety Company for execution. It was executed, promptly delivered to Martin & Martin, and filed by them in the District Court.

■ The bond for which the Singer Company made written application was a bond to stay execution against the Singer Company alone. If the bond which the Surety Company executed and delivered must be taken as a bond that stayed execution against both the Singer Company and Anderson, then the bond was one in excess of the indemnity agreement and the Singer Company is not obliged to indemnify for a loss incurred solely by reason of the fact that the bond as written covered Anderson. This is true even though the attorneys of record for the Singer Company drafted the bond, submitted it to the Surety Company as the bond they wanted, and accepted it after execution, for in asking for and taking a bond that covered Anderson as well as the Singer Company the attorneys went beyond the authority given to them and did not bind their client. To these propositions I am committed by Fidelity & Deposit Co. v. Burden, 30 F. (2d) 610 (C.C.A.2), certiorari denied 280 U.S. 562, 50 S.Ct. 19, 74 L.Ed. 616. There Burden, who had been held liable jointly with others by the trial court, applied for an appeal bond for himself alone and signed an indemnity agreement. The surety executed a bond covering not only Burden but also others who had appealed. Burden's attorney accepted the bond and filed it. On the appeal the judgment was reversed as to Burden and affirmed as to the others, and the surety was obliged to pay. In an action by the surety against Burden on the indemnity agreement, it was held that Burden was not liable for the surety's loss. The act of the attorney in accepting a bond that covered others was held to be beyond his implied powers and not equivalent to an acceptance by Burden himself. If accepting a bond that covers other appellants is beyond the attorney's authority, the drafting of such a bond must likewise be beyond

his authority, an act without legal effect on the client.

The question then is whether the bond must be taken as one that covered Anderson as well as the Singer Company. The Surety Company insists that it is for this court to determine the proper meaning of the bond, without regard to what was decided in the Idaho suit in which the Surety Company was the defendant, the Singer Company not having been a party to that suit, and that an examination of the bond will show that it was merely an agreement to pay in case there was an affirmance as to the Singer Company. The Singer Company, on the other hand, submits that the construction placed on the bond by the Idaho trial court when it entered the judgment of June 23, 1930, against the Surety Company, to the effect that the bond was an agreement to pay in case there was an affirmance as to either the Singer Company or Anderson, is binding and conclusive on the Surety Company in this action.

■ In the proceeding which the Baldwins took against the Surety Company in Idaho courts, it was decided that the bond covered Anderson as well as the Singer Company. The judgment that the Surety Company was finally compelled to pay was an adjudication by due process of law in favor of the Baldwins and against the Surety Company, to the effect that the bond constituted an agreement to pay if the appeal went against Anderson. While the Singer Company was not a party to that suit, the facts there adjudicated against the Surety Company are conclusive against it when it seeks to compel the Singer Company to respond for the loss sustained in that suit.

■ Where an indemnitee has been held liable in an earlier action brought against him by a third party and later brings suit to recover over against an indemnitor for the loss so sustained, the indemnitee is concluded as to facts established against him in the earlier action, and if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the later action against the indemnitor may not be successfully maintained. Alabama Title & Trust Co. v. Millsap, 71 F.(2d) 518 (C.C.A.5); Gregg v. Page Belting Co., 69 N.H. 247, 46 A. 26; Buffalo Steel Co. v. Aetna Life Ins. Co., 156 App.Div. 453, 141 N.Y.S. 1027, affirmed 215 N.Y. 638, 109 N.E. 1067; Edinger & Co. v. Southwestern Surety Co., 182 Ky. 340, 206 S.W. 465. The reason is plain

enough. In such a case the indemnitee himself relies on the judgment against him in the earlier action as the basis of his right of recovery over, and with the judgment he must take for better or worse the adjudicated facts on which the judgment rests. Otherwise he has no way of showing that the alleged loss is one covered by the indemnitor's duty to indemnify. Cahill v. Standard Marine Ins. Co., 204 N.Y. 190, 198, 97 N.E. 486. So here where the Surety Company has pleaded and proved the judgment suffered in the Idaho suit as raising a duty by the Singer Company to indemnify, it is bound by the finding in the Idaho suit that the bond covered Anderson as well as the Singer Company. It is not entitled to have the issue as to the proper construction of the bond tried over again now.

The Surety Company urges that it is only in cases where the indemnitor was notified of the suit against the indemnitee and given a chance to defend that the facts found against the indemnitee in the earlier suit are binding on it in the later suit by the indemnitee against the indemnitor. While it appears that in most of the authorities referred to above the indemnitor did have notice of the earlier suit against the indemnitee, that fact was not a necessary element in the result reached in them. It is doubtless the rule that where the indemnitee relies on facts established in the earlier suit as conclusive against the indemnitor who was not a party to the earlier suit, he must show that the indemnitor had notice and chance to defend. Otherwise the indemnitor would be cast in damages without a fair chance to prove that there was no liability on his part. But the situation is not necessarily the same where it is the indemnitor who relies on facts adjudicated against the indemnitee in the earlier suit. For the indemnitee, himself a party to the earlier suit, had a fair opportunity there to establish the contrary. See Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W.Harr.(36 Del.) 124, 172 A. 260; Liberty Mutual Ins. Co. v. George Colon & Co., 260 N.Y. 305, 183 N.E. 506; 46 Harv.Law Review 858.

But it is not necessary in the present case to determine whether notice of the earlier suit and chance to defend afforded to the indemnitor are necessary in order to make the adjudication in the earlier case binding in favor of the indemnitor. For the fact is that here the Singer Company did have the equivalent of notice and chance to defend. It did not, of course, have notice of the Baldwins' motion for judgment; no one had notice of that step. It had notice, however, of the subsequent measures taken to get rid of the judgment, and it had opportunity to co-operate. The judgment against the Surety Company in the Idaho trial court was, in effect though not in form, a default judgment. It was entered without notice, but the Surety Company had its remedy by way of appeal to the Idaho Supreme Court to have the judgment reviewed, a remedy which the Surety Company failed to take until it was too late. See American Surety Co. v. Baldwin, 287 U.S. 156, 168, 169, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298. A judgment on default is as effective as any other judgment in operating as a binding adjudication of the facts on which the judgment was based. Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S.Ct. 733, 39 L.Ed. 859. The present case is in substance the same as if the Baldwins had brought suit against the Surety Company in the ordinary way, on the claim that the bond covered an affirmance as to Anderson, and the Surety Company, having notified the Singer Company of the pendency of the suit, had thereafter by mistake allowed judgment to go against it by default. In such a case the Surety Company could not hold the Singer Company responsible on the indemnity agreement.

There is no proof in the case that by Idaho law any bond given to stay execution against one appellant necessarily operates as a stay of execution against another appellant, whatever the terms of the bond in question, and no such argument has been advanced by the Surety Company. I am therefore not required to express an opinion as to what the effect would have been if such were the Idaho law.

The Singer Company advances the argument that if the bond did not cover Anderson, then the loss of the Surety Company came about through its own negligence and consequently is not a loss within the reach of the indemnity agreement. The charge of negligence rests on the failure of the Idaho attorneys for the Surety Company to take timely appeal from the judgment of June 23, 1930, and also on their failure to invoke the Fourteenth Amendment at the outset. A study of the depositions taken in Idaho and of the various opinions in the course of the litigation satisfies me that the misfortune that overtook the Surety Company

was not brought about by negligence of its attorneys. On the contrary, they had fair reason to believe that the procedure taken by them was the proper procedure and would result in the relief of the Surety Company from a judgment believed to be void. After a case has been lost, it is easy to say what should have been done.

█ Since the Singer Company is not liable on its indemnity agreement if the Surety Company's loss was caused by the fact that the bond covered an affirmance as to Anderson, and since the loss suffered by the Surety Company was caused by a valid judgment to the effect that the bond did cover an affirmance as to Anderson, there will be a verdict directed in favor of the defendant.