**Turkey Run v. Seneca Specialty Insurance Co.**

62

*Joseph Musto*, for plaintiff.

*Peter Deeb, Debra Krebs* and *Mark Sheridan*, for defendants.

ANDERSON, *J.*, February 13, 2014—Before the court is the motion of defendant Soccer Dome, LLC for Entry of Discontinuance, filed February 7, 2014. Defendant Gleason's response to the motion was filed February 12, 2014.

Plaintiff, Turkey Run Properties, LP, owns certain real estate on which was situated a dome structure which was leased by defendant Soccer Dome, LLC.. Turkey Run purchased insurance on the dome from defendant Seneca Specialty Insurance Company, using Gleason Agency,

Inc. to effectuate the purchase. In February 2011 the dome collapsed. Turkey Run made a claim with Seneca and, after an investigation, Seneca denied the claim, for two reasons: the application for insurance had misrepresented that there had been no losses in the previous five years when in fact there had been a partial collapse in 2007, and faulty or inadequate maintenance (in temperature and pressure levels) excluded the loss from coverage under the policy.

In the instant suit, Turkey Run claims that (1) Seneca breached the insurance contract by failing to diligently investigate the claim and by failing to pay it, (2) Gleason was negligent in filling out the insurance application, and (3) Soccer Dome was negligent in its maintenance of the temperature and pressure in the dome. Turkey Run also seeks a declaration that the damage to the dome "arises out of or is related to use" by Soccer Dome (which would make Soccer Dome liable under its lease with Turkey Run).

All defendants answered the complaint and filed cross-claims against all other defendants; Seneca and Soccer Dome also filed counterclaims against Turkey Run. The cross-claims and counterclaims were answered and the pleadings thus closed without too much wrangling. Discovery proved to run much less smoothly, however, and after significant time in the matter was invested by all counsel, it was decided that mediation might be beneficial. Indeed it was, and following mediation, Turkey Run settled with both Seneca and Soccer Dome. A settlement with Gleason was not forthcoming, however, and the matter proceeded to the pre-trial conference, at which counsel for Gleason objected to the absence of counsel for Soccer

Dome who, based on the settlement with Turkey Run, had not appeared. Gleason contended that Soccer Dome was required to participate in the trial based on Gleason's cross-claim against it. Counsel for Soccer Dome was contacted by telephone and indicated his understanding that only claims for contribution and indemnity had been made and that while any judgment Turkey Run might obtain against Gleason might be reduced because of the settlement with Seneca and Soccer Dome, Gleason could not pursue a claim of negligence against Soccer Dome. Counsel for Gleason disagreed but as the issue was not at that time before the court, the pre-trial conference proceeded and the matter was scheduled for trial. Soccer Dome has now filed the instant motion for entry of discontinuance, seeking an order that the entire matter be discontinued as against it.

Initially, the court notes that counsel for Soccer Dome was correct in his understanding that only claims of contribution and indemnity have been made by Gleason, as follows:

NEW MATTER PURSUANT TO RULE 2252(D) IN THE FORM OF A CROSS-CLAIM AGAINST CO-DEFENDANT, SOCCER DOME, LLC

110. Gleason avers that if plaintiff sustained any compensable injuries or damages as alleged in plaintiff's complaint, said injuries or damages were caused by co-defendant, Soccer Dome, LLC, for the reasons set forth in plaintiff's complaint or otherwise, which allegations are hereby incorporated by reference as if each of said allegations were more fully set forth herein at length.

111. As a result, Gleason avers that co-defendant, Soccer Dome, LLC, is jointly or severally liable, or liable over to Gleason for contribution or indemnity on any recovery obtained by plaintiff.

WHEREFORE, defendant, Gleason Agency, Inc. respectfully avers that co-defendant Soccer Dome, LLC, is liable, jointly or severally liable, or liable over to Gleason Agency, Inc. for contribution or indemnity on any recovery obtained by plaintiff.

Gleason argues against dismissal on the basis that the request for indemnity is a valid claim against Soccer Dome.[1] Before reaching that point, however, the court will address Gleason's preliminary points.

First, Gleason argues that the motion should be denied as an untimely motion for summary judgment. Soccer Dome has filed the motion under Pa.R.C.P. 229, which speaks to voluntary discontinuance by a plaintiff before trial. That is indeed not the case here, and Gleason is thus correct that the motion should be treated as a motion for summary judgment. Since the latest version of the scheduling order in this matter required dispositive motions to have been filed by August 5, 2013, the instant motion *is* untimely. The court will not dismiss the motion on that basis, however, as to do so would work a manifest injustice: Soccer Dome would be required to defend an invalid claim, one which it reasonably could not have foreseen until counsel for Gleason announced an intent to pursue it, after the dispositive motions deadline had

---

1. Although Gleason cross-claimed for indemnity and/or contribution, only the claim for indemnity is being pursued in Gleason's response to the instant motion.

passed.[2]

Second, Gleason argues it would be prejudiced by dismissal of its cross-claim against Soccer Dome. Interestingly, Gleason cites Rule 229 in support of this argument, for the proposition that discontinuance as against some but not all defendants is not appropriate where discontinuance would prejudice the remaining parties. Ignoring the irony in this argument, the court will simply note that as it is determined hereinafter that Gleason does not have a valid claim against Soccer Dome, dismissal of that claim cannot constitute prejudice.

Finally, Gleason argues that encouraging settlement is no justification for depriving it of a valid cross-claim against Soccer Dome. The court wholeheartedly agrees with Gleason on this point, and if Gleason had a valid cross-claim against Soccer Dome the motion would not be granted. As discussed hereinafter, however, the court has concluded that Gleason does not have such a valid cross-claim.

Gleason contends that it has a valid cross-claim against Soccer Dome for indemnity because Soccer Dome was "actually responsible for the collapse" and Gleason was only, if at all, "secondarily liable." Gleason argues that "the issue is not whether Gleason was itself negligent, but whether Gleason's alleged negligence 'contributed to the happening of the accident,'" and that Gleason "in no way caused this damage," citing *Builder's Supply Co.*

2. It is at this point the court notes with interest that each of the three defendants filed identical, and, in the court's opinion, invalid, cross-claims for contribution and indemnity against the other two defendants. Seneca and Soccer Dome settled with Turkey Run and did not pursue their cross-claims. Apparently, only Gleason's boiler-plate boiled over.

*v. McCabe*, 77 A.2d 368, 370 (Pa. 1951). This argument is simply incorrect. While Gleason may not have had anything to do with the collapse, it is alleged that it had much to do with the refusal of the insurance company to pay, and that lack of payment, in addition to the collapse itself, is said by Turkey Run to have caused further injury in the form of mold and mildew which accumulated as the parties wrestled with the claim. Gleason's negligence is thus indeed an issue and further, Gleason's focus on the collapse is misplaced, as primary and secondary liability is not defined based on some sort of "which negligence was worse" analysis.

In *Builder's Supply*, the court pointed out that secondary, as distinguished from primary, liability "rests upon a fault that is imputed or constructive *only*, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Id.* at 371. Where there is no legal relation between the parties, there can be no "secondary" liability and thus no right to indemnity. *Id.* The court therefore concluded that the party seeking indemnification in the case before it, a driver who, because of the negligent actions of another driver, collided with a third driver, was not entitled thereto based on the fact that he was himself negligent even though the other driver may have been 'more negligent.' *Id.* As the Court noted, "[t]he difference between primary and secondary liability is not based on a difference in *degrees* of negligence." *Id.* at 370 (emphasis in original).

Here, there is no legal relationship between Gleason

and Soccer Dome, nor is there any other basis on which to conclude that Gleason is "secondarily" liable, such that it would be entitled to indemnity from Soccer Dome.

In the motion for discontinuance, Soccer Dome directs this court to *TVMS v. Alexander & Alexander, Inc.*, 583 F.Supp. 1089 (E.D. Pa. 1984), contending such is dispositive. Gleason argues, however, that the case is not binding on this court. True as that may be, the court finds it supports the conclusion that Gleason is not entitled to pursue a claim of indemnification against Soccer Dome.

TVMS suffered a loss as a result of negligence of Showtime Entertainment. TVMS held an insurance policy written by Wausau Underwriters Insurance Company and obtained by Alexander & Alexander, its insurance broker. TVMS made a claim but Wausau refused to pay the claim. TVMS sued Wausau for bad faith and reformation of the policy, and Alexander for negligence in obtaining the policy. Alexander then filed a third-party complaint against Showtime and Showtime moved to dismiss. In evaluating the validity of the claim, the court considered three theories: indemnity, contribution and subrogation, and found none applicable. In evaluating a possible indemnification claim, the court engaged in the following analysis:

> Indemnity shifts the entire loss from one defendant to another. *Burch v. Sears*, 320 Pa. Super. 444, 467 A.2d 615, 622 (1983). In Pennsylvania, indemnity is available only from those who are primarily liable to those who are merely secondarily or vicariously liable. *Id.* "To evaluate primary as against secondary liability courts have focused on factors such as active or passive

negligence and knowledge of or opportunity to discover or prevent the harm." *Id.* The Pennsylvania Supreme Court has described indemnity as follows:

It is a right which insures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.

*Builders Supply Co. v. McCabe*, 366 Pa. 322, 325, 77 A.2d 368 (1951). In the present case, plaintiff's complaint cannot be construed to allege secondary negligence on the part of A & A and primary negligence on the part of Showtime. Furthermore, there is no contractual relationship or other "legal relationship" alleged between A & A and Showtime. If the jury finds against defendant A & A, it will do so based on the theory that A & A was negligent in obtaining the Wausau insurance policy for the plaintiff. This negligence, if found by the jury, would be active fault on the part of the defendant A & A, and A & A could not shift its loss to Showtime because there is no secondary relationship between A & A and Showtime.

*Id.* at 1091-1092. In the instant case, if the jury finds against Gleason, it will do so based on the theory that Gleason was negligent in obtaining the Seneca policy for Turkey Run. This negligence would be active fault on the part of Gleason, and there is no basis on which to shift Gleason's loss to Soccer Dome. Soccer Dome is thus entitled to the requested relief.

## ORDER

And now, this 13th day of February 2014, for the foregoing reasons, the motion for entry of discontinuance filed by Soccer Dome on February 7, 2014, which the court will treat in part as a motion for summary judgment, is hereby granted. The claim filed by Turkey Run Properties, LP against Soccer Dome, LLC, and the cross-claim filed by Seneca Specialty Insurance Company against Soccer Dome, LLC are hereby discontinued. Summary judgment on the cross-claim filed by Gleason Agency, Inc. against Soccer Dome, LLC is hereby entered in favor of Soccer Dome, LLC.